**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reynel Amador Lucero,<br><br>    Petitioner,<br><br>v.<br><br>David Shinn, et al.,<br><br>    Respondents. | No. CV-22-00866-PHX-DWL<br><br>**ORDER** |

On May 19, 2022, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("the Petition"). (Doc. 1.) On December 5, 2022, Petitioner filed an "Omnibus Motion for Supplemental Expansion of Record Per Rule 7 and for Evidentiary Hearing Per Rule 8." (Doc. 20.) On January 27, 2023, Magistrate Judge Burns issued a Report and Recommendation ("R&R") concluding that the Petition should be denied and dismissed with prejudice and that the Omnibus Motion should be denied as moot. (Doc. 23.) Afterward, Petitioner filed objections to the R&R (Doc. 26) and Respondents filed a response (Doc. 27). For the following reasons, the Court overrules Petitioner's objections, adopts the R&R, and terminates this action.

I.    <u>Background</u>

*Trial Court Proceedings.* Petitioner was charged with two counts of sexual conduct with a minor, both felonies and dangerous crimes against children. (Doc. 23 at 1-2.) At trial, the prosecution presented evidence that Petitioner had confessed to the crimes on two different occasions. *State v. Lucero*, 220 P.3d 249 (Ariz. Ct. App. 2009.) In one of the

confessions, made to a member of the Army's Criminal Investigations Division, Petitioner "confessed committing sexual acts with a minor, J, by going into her room at night, removing her undergarment, and rubbing his penis between her buttocks . . . [and] confessed placing his penis in J's mouth on another occasion." *Id.* at 253. The prosecution "also introduced into evidence a tape of a confrontation call made by [Petitioner's] wife to [Petitioner] during which [Petitioner] admitted committing the same acts of sexual misconduct with J." *Id.*

At trial, Petitioner was convicted of both counts as charged. (Doc. 23 at 2.)

On July 1, 2008, Petitioner was sentenced to 20 years' imprisonment on Count One and to a consecutive term of life without the possibility of parole for 35 years on Count Two. (*Id.*)

*The Direct Appeal*. Petitioner timely appealed his convictions to the Arizona Court of Appeals, raising two issues: (1) the trial court erred in denying Petitioner's motion to suppress; and (2) the trial court erred by instructing the jury that it was a question of fact whether the United States Army special agent who testified regarding Petitioner's statements was a "law enforcement officer." (*Id.*)

On December 10, 2009, the Arizona Court of Appeals affirmed Petitioner's convictions. (*Id.*) Petitioner thereafter filed a petition for review in the Arizona Supreme Court. (*Id.*) On September 21, 2010, the Arizona Supreme Court summarily denied review. (*Id.*)

*Initial PCR Proceeding*. On October 12, 2010, Petitioner filed a timely Notice of Post-Conviction Relief ("PCR"), indicating that he would be raising a claim of ineffective assistance of counsel ("IAC"). (*Id.*) However, Petitioner's appointed counsel later filed a notice indicating that she was "unable to find any claims for relief to raise in post-conviction proceedings." (*Id.*)

On April 9, 2012, Petitioner filed a *pro se* PCR petition. (*Id.*) It was initially struck without prejudice for a procedural violation, which Petitioner remedied on May 30, 2012, by filing a compliant and timely PCR petition. (*Id.* at 2-3.)

On November 7, 2012, the trial court denied and dismissed Petitioner's first PCR proceeding. (*Id.* at 3-4.)

On December 4, 2012, Petitioner filed a motion to enlarge the deadline to file a petition for review in the Arizona Court of Appeals, which the trial court denied on December 11, 2012. (*Id.* at 4.) Thereafter, on December 21, 2012, Petitioner filed a petition for review in the Arizona Court of Appeals. (*Id.*) On January 11, 2013, the appellate court dismissed Petitioner's petition as untimely. (*Id.*)

*Successive PCR Proceedings*. On May 2, 2013, Petitioner filed a second PCR petition, which raised a claim of newly discovered evidence. (*Id.*) This petition was denied on June 6, 2013 and the Arizona Court of Appeals affirmed the denial of relief on February 10, 2015. (*Id.* at 4-5.)

On October 25, 2018—more than three years later—Petitioner filed a third PCR petition, which raised additional claims of newly discovered evidence. (*Id.* at 6.) This petition was dismissed on November 20, 2018 and Petitioner did not seek further review. (*Id.*)

On November 14, 2019, Petitioner filed a fourth PCR petition, which "raised claims of a coerced confession, the lack of court jurisdiction and actual innocence." (*Id.* at 6-7.) This petition was denied on December 10, 2019 and the Arizona Court of Appeals summarily dismissed Petitioner's petition for review (on untimeliness grounds) on March 3, 2020. (*Id*. at 6-8.)

*This Action*. On May 19, 2022—more than two years after the dismissal of his fourth PCR petition—Petitioner initiated this action by filing the Petition. (Doc. 1.) The Court previously construed it as raising the following six grounds for relief:

(1) Regarding Count One, the State failed to prove all the elements of Arizona Revised Statutes section 13-1405 beyond a reasonable doubt.

(2) Petitioner is actually innocent of Count Two because he "could not have committed any act after his removal from the residence, occurring June 23, 2004, as he was from that point, on Intensive Supervised Visitation Status."

    (3)    Regarding Counts One and Two, the State failed to "corroborate the facts of each charge, resulting in a 'decision that was based on an unreasonable determine at of the facts' . . . and subjecting [Petitioner] to fatal variance and double jeopardy."

    (4)    Petitioner's trial and post-conviction counsel were ineffective, "triggering" *Martinez v. Ryan*, 566 U.S. 1 (2012).

    (5)    Petitioner was subjected to prosecutorial misconduct because the prosecutor presented evidence he knew or should have known was false, withheld an exculpatory facsimile, and made false statements of fact during closing arguments.

    (6)    The trial court showed, "at [a] minimum," an appearance of bias in dealings with Petitioner.

(Doc. 5 at 1-2.)

*The R&R*. The R&R concludes the Petition should be denied and dismissed with prejudice because it is barred by AEDPA's one-year statute of limitations. (Doc. 23 at 9-17.) The R&R states that the one-year limitations period began running on November 7, 2012, which is when the trial court denied Petitioner's first, timely PCR petition. (*Id.* at 9-10.) The R&R further states that Petitioner is not entitled to statutory tolling for the appellate proceedings during his first PCR proceeding (because his petition for review was dismissed on untimeliness grounds) or for any portion of the subsequent PCR proceedings. (*Id.* at 10-11.) Thus, the R&R concludes that AEDPA's one-year limitations period expired on November 8, 2013, which is "nearly 9 1/2 years" before Petitioner initiated this proceeding. (*Id.*)

Next, the R&R states that Petitioner is not entitled to any period of equitable tolling. (*Id.* at 11-17.) More specifically, the R&R construes Petitioner's filings as raising three reasons why equitable tolling should be available: (1) he was denied effective assistance of post-conviction counsel; (2) he was prevented from pursuing his rights diligently by the state's failure to follow its procedures; and (3) he is actually innocent. (*Id.*) Because

Petitioner does not challenge, in his objections, the sufficiency of the R&R's rationale for concluding that the first two reasons lack merit, it is unnecessary to summarize them here. As for the third reason, the R&R explains that, "[u]nder *Schlup*, a petitioner seeking federal habeas review under the miscarriage of justice exception must establish his or her factual innocence of the crime and not mere legal insufficiency. To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." (*Id.* at 13, citations and internal quotation marks omitted.) The R&R concludes that Petitioner cannot satisfy these requirements because (1) the evidence on which Petitioner relies, "two affidavits, one purportedly signed by his mother and the other by his brother," does not constitute new, reliable evidence because the brother's affidavit is undated and the mother's affidavit relays historical information without any explanation as to why it could not have been produced sooner (*id.* at 14-15); (2) the affidavits do not, at any rate, establish innocence, as they seem intended to establish an alibi but "do not provide an alibi for the entire period covered by count two of the indictment" (*id.* at 15-16); and (3) to the extent Petitioner's argument is that he is legally innocent of Count One because "the state failed to prove that he engaged in 'masturbatory contact,'" this argument fails because there was sufficient evidence to show that Petitioner engaged in such conduct—the prosecutor's statement that "there was some question whether there was penetration or not" is not a concession of insufficiency (*id.* at 16-17).

Finally, "having determined that Petitioner's habeas petition is untimely, without excuse," the R&R recommends that the Omnibus Motion be denied as moot. (*Id.* at 17.)

II.     Legal Standard

A party may file written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."). "The district judge

must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *See* Fed. R. Civ. P. 72(b)(3).

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").

III.     Analysis

Petitioner's first set of objections focus on the R&R's rejection of his contention that he is entitled to equitable tolling based on actual innocence. (Doc. 26 at 1-4.) According to Petitioner, the R&R "fails to apply the correct precedent in determining 'Actual (or Factual) Innocence' versus 'Factual Sufficiency' . . . . While the difference between Actual Innocence and Factual Sufficiency is subtle . . . Actual Innocence means that the petitioner is Factually Innocent of the Crime for which he has been convicted, based on the fact that he did not or could not have committed the crime." (*Id.* at 2.) Petitioner argues that these principles support his claim for relief because "no penetration was claimed—let alone proven—in Count #1, which is a key element of the crime charged." (*Id.*) Elsewhere, Petitioner concedes that "[t]he State brought forth testimony that he 'placed his penis between [the victim's] buttocks'" but contends that "[t]his action,

wholly disputed by [Petitioner] as having occurred, still does not reach the level of 'sexual intercourse' as defined under A.R.S. § 13-1401(A)(4)." (*Id.* at 4.) Meanwhile, Petitioner contends that he "has shown that Actual Innocence has occurred in regards to Count #2, where the timeframe to which he was convicted is impossible." (*Id.* at 3.) Petitioner elaborates that "the timeframe of the conviction for Count #2 was August 1, 2004 to December 9, 2005" but various pieces of evidence show that "he was removed from the home on June 23, 2004." (*Id.* at 5-6.)

In response, Respondent identifies an array of reasons why Petitioner is not entitled to relief based on his claim of actual innocence, including that Petitioner is at times advancing new arguments that he did not properly raise to Judge Burns. (Doc. 27 at 4-7.)

The Court agrees with Respondent that Petitioner is not entitled to equitable tolling based on his claim of actual innocence. As the Ninth Circuit has explained, "a petitioner asserting such a claim need assert more than that insufficient evidence supported the petitioner's conviction. Instead, the petitioner must demonstrate that in light of new evidence, it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. This new evidence must be reliable, and the reviewing court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence. Based on the total record, the court must make a probabilistic determination about what reasonable, properly instructed jurors would do." *Prescott v. Santoro*, 53 F.4th 470, 482 (9th Cir. 2022) (cleaned up). The Supreme Court has "often emphasized the narrow scope of the exception. To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. Given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citation and internal quotation marks omitted).

Here, putting aside the fact that Petitioner's new evidence lacks indicia of reliability for the reasons stated in the R&R, Petitioner's actual innocence claim fails because it is based on a pair of inaccurate premises. With respect to Count One, Petitioner concedes

there was evidence he placed his penis between the victim's buttocks but argues that such conduct could not qualify as "sexual intercourse" under the relevant statute because there was no penetration. But as both the R&R and Respondent note, Arizona law is to the contrary. *State v. Florez*, 384 P.3d 335, 341 (Ariz. Ct. App. 2016) ("[A] prosecutor has the discretion to charge 'humping' under the greater offense of sexual conduct with a minor, so long as the conduct described is masturbatory contact with the penis or vulva as required by § 13–1401(A)(4). A reasonable jury could conclude that Florez knowingly or intentionally stimulated his penis by rubbing it against the body of a person under age fifteen. The fact that clothing separated his penis from the victim's body does not, of necessity and as a matter of law, exclude his acts from the statutory definition of 'sexual intercourse.' The evidence was sufficient to support his convictions for sexual conduct with a minor . . . ."). *Cf. State v. Crane*, 799 P.2d 1380, 1386 (Ariz. Ct. App. 1990) ("[W]hen the appellant was rubbing his penis back and forth between the victim's legs, there was 'manual masturbatory contact with the penis' between two individuals. . . . A.R.S. § 13–1401(3) does not mandate penetration in every case.").

Meanwhile, with Respect to Count Two, Petitioner's theory is that the new evidence proves his innocence because it shows that he "was removed from the home on June 23, 2004" and thus had what was effectively an alibi during "the timeframe of the conviction for Count #2," which "was August 1, 2004 to December 9, 2005." (Doc. 26 at 4.) But as the R&R notes, Petitioner is mistaken about the charged timeframe for Count Two—its starting date was September 1, *2003*. (Doc. 12-1 at 4 [indictment]; Doc. 12-6 at 5 [jury instruction]; Doc. 23 at 15-16 [R&R's analysis of same].) Thus, as Respondent notes, "even if [Petitioner's] unsworn affidavits . . . are reliable, they fail to account for any of the period between September 11, 2003 and September 21, 2003." (Doc. 27 at 6-7.)

Petitioner's final set of objections focus on the R&R's recommendation that his Omnibus Motion be denied as moot. (Doc. 26 at 5-7.) Among other things, Petitioner argues that this recommendation is flawed because it "hinged upon the faulty finding that his claim was merely 'Factual Sufficiency' and not 'Actual Innocence,' a finding that was

- 8 -

shown faulty in the above argument." (*Id.* at 5.) In response, Respondent argues that Petitioner's objections should be denied because he does not specifically address the R&R's mootness analysis. (Doc. 27 at 8-9.)

Petitioner's final set of objections lack merit. Petitioner does not directly address the R&R's mootness rationale for recommending the denial of his Omnibus Motion, which means that any objection is waived, and seems to argue in any event that his entitlement to the relief sought in the Omnibus Motion hinges on his contention that the R&R erred by rejecting his actual innocence claim. But as discussed above, the Court finds no error in the R&R's determination that the actual innocence claim should be rejected.

Accordingly, **IT IS ORDERED** that:

1. Petitioner's objections to the R&R (Doc. 26) are **overruled**.

2. The R&R (Doc. 23) is **accepted**.

3. The Petition (Doc. 1) is **denied and dismissed with prejudice**.

4. The Omnibus Motion (Doc. 20) is **denied**.

5. A Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

6. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 31st day of March, 2023.

Dominic W. Lanza
United States District Judge